UNITED STATES DISTRICT COURT

IN THE NORTHERN DISTRICT OF CALIFORNIA

EARL WARNER,

    Plaintiff,

vs.

MATTHEW L. CATE, et al.,

    Defendants.

No. C 11-05039 YGR (PR)

**ORDER OF SERVICE**

## INTRODUCTION

Plaintiff Earl Warner, a state prisoner who is currently housed at the Department of Mental Health in Vacaville, filed this *pro se* civil rights action under 42 U.S.C. § 1983. His motion for leave to proceed *in forma pauperis* has been granted.

Venue is proper because the events giving rise to the claim are alleged to have occurred while Plaintiff was incarcerated at Salinas Valley State Prison (SVSP), which is located in this judicial district. *See* 28 U.S.C. § 1391(b).

In his complaint, Plaintiff names the following Defendants: Matthew L. Cate, Secretary of the California Department of Corrections and Rehabilitation (CDCR); CDCR Chief of the Inmate Appeals Branch R. Manuel; CDCR Appeals Examiner K. Kostecky; SVSP Correctional Administrator L. Trexler; SVSP Chief Deputy Warden A. Solis; and SVSP Jewish Chaplain Rabbi Y. Friedman.

Plaintiff alleges that he is a practicing Jew and that prison officials have failed to offer him a Kosher diet. Plaintiff contends that the actions of Defendants violates his First Amendment rights. He also alleges violations of his due process and equal protection rights. He alleges that he filed a 602 inmate appeal and that he has exhausted all available administrative remedies with respect to his claims. He seeks injunctive relief and monetary damages.

## DISCUSSION

**I.    Standard of Review**

A federal court must engage in a preliminary screening of any case in which a prisoner seeks

redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. §1915A(a). The court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §1915A(b)(1),(2).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

## II. Legal Claims

### A. First Amendment Claim and Supervisory Liability Claim

The First Amendment right to the free exercise of religion is violated where a defendant burdens the practice of a prisoner's religion by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests. *See Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997). To reach the level of a constitutional violation, "the interference with one's practice of religion 'must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine.'" *Id.* at 737 (quoting *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir. 1987)). A prisoner may be inconvenienced in the practice of his or her faith so long as the governmental conduct does not prohibit the prisoner from "participating in the mandates of his religion." *See id.* The mandates of a religion are not merely what is minimally required of adherents of a religion but include that which "the individual human being perceives to be the requirement of the transhuman Spirit to whom he or she gives allegiance." *Peterson v. Minidoka County School Dist.*, 118 F.3d 1351, 1357 (9th Cir. 1997). A prison regulation that impinges on an inmate's First Amendment rights is valid if it is reasonably related to legitimate penological interests. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987).

Here, Plaintiff alleges that he is being denied a Kosher diet, which is required by his religious beliefs as a member of the Jewish religion. Plaintiff claims that Defendants denied his request and his 602 appeal because he "was not born to a "Jewish" mother of "Hebrew" origin. (Compl. at 6.)

2

Inmates "have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987). Allegations that prison officials refuse to provide a healthy diet conforming to sincere religious beliefs states a cognizable claim under 42 U.S.C. 1983 for the denial of the right to exercise religious practices and beliefs. *Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1993). It is appropriate for prison authorities to deny a special religious diet if an inmate is not sincere in his religious beliefs, *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987), or if the belief system does not constitute a "religion" under the First Amendment, *Africa v. Pennsylvania*, 662 F.2d 1025 (3d Cir. 1981). Nevertheless, at this stage, when liberally construing Plaintiff's complaint, they are sufficient to require a response from Defendants as further explained below.

Liability may be imposed on an individual defendant under section 1983 if the plaintiff can show that the defendant proximately caused the deprivation of a federally protected right. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988); *Harris v. City of Roseburg*, 664 F.2d 1121, 1125 (9th Cir. 1981). A person deprives another of a constitutional right within the meaning of section 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains. *Leer*, 844 F.2d at 633; *see, e.g., Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) (prison official's failure to intervene to prevent Eighth Amendment violation may be basis for liability). The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. *Leer*, 844 F.2d at 633.

A supervisor may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted). A supervisor therefore generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). An administrator may be liable for deliberate indifference to a serious

3

medical need, for instance, if he or she fails to respond to a prisoner's request for help. *Jett v. Penner*, 439 F.3d 1091, 1098 (9th Cir. 2006). "'Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others.'" *Preschooler II v. Davis*, 479 F.3d 1175, 1183 (9th Cir. 2007) (citations omitted). Evidence of a prisoner's letter to an administrator alerting him to a constitutional violation is sufficient to generate a genuine issue of material fact as to whether the administrator was aware of the violation, even if he denies knowledge and there is no evidence the letter was received. *Jett*, 439 F.3d at 1098. Evidence that a prison supervisor was personally involved in an unconstitutional transfer and denied all appeals of the transfer, for example, may suffice. *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *see also Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (supervisor who signed internal affairs report dismissing complaint against officer despite evidence of officer's use of excessive force may be liable for damages).

Read liberally, the allegations in Plaintiff's complaint state a cognizable First Amendment claim against Defendant Friedman. Plaintiff also states a cognizable First Amendment claim against those Defendants who reviewed Plaintiff's 602 appeal, but did not remedy the constitutional violation. These are Defendants Trexler, Solis, Kostecky, and Manuel. Therefore, this claim may proceed against the aforementioned Defendants.

Plaintiff also names Defendant Cate, the CDCR Secretary. Defendants Kostecky and Manuel denied Plaintiff's grievance at the Director's level of review "on behalf of" Defendant Cate. However, holding Defendant Cate accountable for Defendants Kostecky's and Manuel's conduct in these circumstances would be tantamount to imposing liability on the grounds of respondeat superior. There is, however, no respondeat superior liability under § 1983 solely because a defendant is responsible for the actions or omissions of another. *See Taylor*, 880 F.2d at 1045. A supervisor generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Id.* As mentioned above, a supervisor may also be held liable if he or she implemented "a policy so

4

deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Redman*, 942 F.2d at 1446. Plaintiff's claim against Defendant Cate is therefore dismissed with leave to amend. Plaintiff may file an amendment to the complaint that alleges supervisory liability of Defendant Cate under the standards explained above.

### B.      Equal Protection Claim

The Equal Protection Clause requires that an inmate who is an adherent of a minority religion be afforded a "reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to the conventional religious precepts," *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (Buddhist prisoners must be given opportunity to pursue faith comparable to that given Christian prisoners), as long as the inmate's religious needs are balanced against the reasonable penological goals of the prison, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987). *See Allen v. Toombs*, 827 F.2d 563, 568-69 (9th Cir. 1987). It does not follow, however, that a prison must duplicate every religious benefit it provides so that all religions are treated exactly the same. *See Cruz*, 405 U.S. at 322 n.2 (identical facilities or personnel."). It does require that the prison make a good faith accommodation in light of practical considerations. *See Freeman*, 125 F.3d at 737; *Thompson v. Commonwealth of Kentucky*, 712 F.2d 1078, 1082 (6th Cir. 1983) (court should scrutinize the prison officials' conduct to determine whether they deliberately discriminated against the minority religion or abused their discretion in distributing the prisons' limited resources).

Plaintiff alleges that he was not provided the same right to an appropriate religious diet that was afforded to fellow prisoners who adhere to more conventional religious precepts. Because Plaintiff alleges that his dietary needs could be met consistent with his religious dietary restrictions at a minimal cost to the institution, he sufficiently alleges that he was denied a reasonable opportunity to observe his faith comparable to the opportunity afforded to prisoners observing more conventional religions. Therefore, he states a cognizable equal protection claim against the same aforementioned Defendants against whom he has stated a cognizable First Amendment claim.

### C.      Due Process Claim Relating to Defendant Freidman's Failure to Respond

The Due Process Clause of the Fourteenth Amendment protects individuals against governmental deprivations of "life, liberty or property," as those words have been interpreted and

given meaning over the life of our republic, without due process of law. *Board of Regents v. Roth*, 408 U.S. 564, 570-71 (1972); *Mullins v. Oregon*, 57 F.3d 789, 795 (9th Cir. 1995).

The touchstone of due process is protection of the individual against arbitrary action of government, whether the fault lies in a denial of fundamental procedural fairness (i.e., denial of procedural due process guarantees) or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective (i.e., denial of substantive due process guarantees). *See County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998).

Plaintiff claims that on September 9, 2010, he submitted a "CDC-GA 22 (inmate Request for Interview/Action) to the office of defendant Y. Friedman, asking to be forwarded a[n] application (Religious Diet Request Form - CDCR 3030). (Compl. at 3.) However, Plaintiff claims that he received no response from Defendant Friedman. Thus, on September 21, 2010, Plaintiff submitted a 602 inmate appeal form "for initiation of administrative processing." (*Id.*) Plaintiff was instructed to first go through an "informal resolution;" however, after forwarding his appeal to Defendant Friedman "as a[n] attempt to obtain informal resolution," Plaintiff still did not receive a response. (*Id.* at 4.) Thereafter, Plaintiff was able to submit his appeal through all levels of appeal, during which he received responses from each level. In fact, on December 1, 2010, Defendant Friedman was assigned to process his appeal at the first level of review. (*Id.*) Defendant Friedman interviewed Plaintiff, and eventually denied his request for a Kosher diet because he was not qualified for such a diet, as explained above. (*Id.* at 4-7.) Prior to ending the interview, Defendant Friedman gave Plaintiff an opportunity to submit a CDCR-3030, which Defendant Friedman "indicated that he would use to facilitate plaintiff being added to the "meat alternative" diet list -- which the defendant described to the Plaintiff as a diet which "Is the best diet that you will qualify for here . . . at least while I'm working on getting you the kosher diet." (*Id.* at 6-7.)

Plaintiff claims that Defendant Friedman's failure "to respond to [his] CDC-GA 22 (Inmate Request) form asking to be provided with a CDCR-3030 (Religious Diet Request) form violated [Plaintiff's] right(s) and constituted a due process violation under the Fourteenth Amendment of the United States Constitution." (*Id.* at 8.) Plaintiff also alleges that Defendant Friedman's failure to respond to his attempt to obtain informal resolution constituted a violation of his rights as well.

6

First, the Court shares Plaintiff's concern about Defendant Friedman's delay in responding to his initial request for the CDCR-3030 form; however, neither negligent nor intentional deprivation of property states a due process claim under § 1983. *See Parratt v. Taylor*, 451 U.S. 527, 535-44 (1981) (neither the negligent nor intentional deprivation of property states a due process claim if the deprivation was random and unauthorized), overruled in part on other grounds, *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Second, Plaintiff seems to be arguing that the prison administrative process did not afford him any relief because Defendant Friedman failed to respond to his appeal at the informal level. Contrary to such a belief, the initial informal appeal is not the end-all of the prison appeal process. "The informal level is that at which the appellant and staff involved in the action or decision attempt to resolve the grievance informally." Cal. Code Regs. tit. 15, § 3084.5(a). "Unless excepted pursuant to subsection (3) evidence of an attempt to obtain informal level review is required before an appeal may be accepted for formal review." *Id.* § 3084.5(a)(1). Nothing prevents a California prisoner from proceeding to the next level (first level of formal review). In fact, as shown here, Plaintiff was able to proceed with his 602 appeal to the first level of review where he was eventually interviewed by Defendant Friedman and offered an opportunity to complete a CDCR-3030. Plaintiff then proceeded to exhaust his claims in his 602 appeal through all the levels of review. Therefore, Plaintiff was not foreclosed from proceeding with the prison appeal process and exhausting available administrative remedies simply because he did not receive a response to his informal appeal. *Accord Yousef v. Reno*, No. 99-1504, 2001 WL 744961, at **6-7 (10th Cir. July 2, 2001) (rejecting argument that prisoner's ability to exhaust administrative process was frustrated by misleading response to informal resolution where prisoner was not precluded from proceeding to other levels of administrative process). Accordingly, Plaintiff fails to state a cognizable due process claim against Defendant Friedman, and this claims is DISMISSED. Because no amendment can cure the pleading deficiencies of his due process claim, the dismissal is with prejudice and without leave to amend.

## **CONCLUSION**

For the foregoing reasons,

1. Plaintiff's complaint states cognizable First Amendment and equal protection claims

7

against Defendants Friedman, Trexler, Solis, Kostecky, and Manuel.

2. Plaintiff's supervisory liability claim against Defendant Cate is DISMISSED with leave to amend as indicated above. Within **thirty (30) days** of the date of this Order, Plaintiff may file an amended supervisory liability claim against Defendant Cate as set forth above in Section II(A) of this Order. (Plaintiff shall resubmit only his amended supervisory liability claim and not the entire complaint.) The failure to do so will result in the dismissal without prejudice of the supervisory liability claim against Defendant Cate.

3. Plaintiff's due process claim against Defendant Friedman is DISMISSED with prejudice and without leave to amend.

4. The Clerk of the Court shall mail a Notice of Lawsuit and Request for Waiver of Service of Summons, two copies of the Waiver of Service of Summons, a copy of the operative complaint and all attachments thereto (docket no. 1) and a copy of this Order to **CDCR Chief of the Inmate Appeals Branch R. Manuel; CDCR Appeals Examiner K. Kostecky; SVSP Correctional Administrator L. Trexler; SVSP Chief Deputy Warden A. Solis; and SVSP Jewish Chaplain Rabbi Y. Friedman.** The Clerk of the Court shall also mail a copy of the complaint (docket no. 1) and a copy of this Order to the State Attorney General's Office in San Francisco. Additionally, the Clerk shall mail a copy of this Order to Plaintiff.

5. Defendants are cautioned that Rule 4 of the Federal Rules of Civil Procedure requires them to cooperate in saving unnecessary costs of service of the summons and complaint. Pursuant to Rule 4, if Defendants, after being notified of this action and asked by the Court, on behalf of Plaintiff, to waive service of the summons, fail to do so, they will be required to bear the cost of such service unless good cause be shown for their failure to sign and return the waiver form. If service is waived, this action will proceed as if Defendants had been served on the date that the waiver is filed, except that pursuant to Rule 12(a)(1)(B), Defendants will not be required to serve and file an answer before **sixty (60) days** from the date on which the request for waiver was sent. (This allows a longer time to respond than would be required if formal service of summons is necessary.) Defendants are asked to read the statement set forth at the foot of the waiver form that more completely describes the duties of the parties with regard to waiver of service of the summons. If service is waived after

the date provided in the Notice but before Defendants have been personally served, the Answer shall be due **sixty (60) days** from the date on which the request for waiver was sent or **twenty (20) days** from the date the waiver form is filed, whichever is later.

      6.     Defendants shall answer the complaint in accordance with the Federal Rules of Civil Procedure. The following briefing schedule shall govern dispositive motions in this action:

          a.     No later than **ninety (90) days** from the date their answer is due, Defendants shall file a motion for summary judgment or other dispositive motion. The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56. If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date the summary judgment motion is due. All papers filed with the Court shall be promptly served on Plaintiff.

          b.     Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendants no later than **sixty (60) days** after the date on which Defendants' motion is filed. The Ninth Circuit has held that the following notice should be given to *pro se* plaintiffs facing a summary judgment motion:

> The defendant has made a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
>
> Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted [in favor of the defendants], your case will be dismissed and there will be no trial.

*See Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc).

Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (party opposing summary judgment must come forward with

9

evidence showing triable issues of material fact on every essential element of his claim). Plaintiff is cautioned that because he bears the burden of proving his allegations in this case, he must be prepared to produce *evidence* in support of those allegations when he files his opposition to Defendants' dispositive motion. Such evidence may include sworn declarations from himself and other witnesses to the incident, and copies of documents authenticated by sworn declaration. Plaintiff will not be able to avoid summary judgment simply by repeating the allegations of his complaint.

       c.    Defendants shall file a reply brief no later than **thirty (30) days** after the date Plaintiff's opposition is filed.

       d.    The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

7. Discovery may be taken in this action in accordance with the Federal Rules of Civil Procedure. Leave of the Court pursuant to Rule 30(a)(2) is hereby granted to Defendants to depose Plaintiff and any other necessary witnesses confined in prison.

8. All communications by Plaintiff with the Court must be served on Defendants, or Defendants' counsel once counsel has been designated, by mailing a true copy of the document to Defendants or Defendants' counsel.

9. It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute, pursuant to Federal Rule of Civil Procedure 41(b).

10. Extensions of time are not favored, though reasonable extensions will be granted. Any motion for an extension of time must be filed no later than **fifteen (15) days** prior to the deadline sought to be extended.

IT IS SO ORDERED.

DATED: May 8, 2012

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**